UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JAMIE ROGERS, ET AL. | : | DOCKET NO. 16-cv-1613 |
| VERSUS | : | |
| PROGRESSIVE DIRECT INSURANCE CO., ET AL. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM ORDER

Before the court is a Motion for Partial Summary Judgment [doc. 20] filed pursuant to Rule 56 of the Federal Rules of Civil Procedure by Jamie Rogers and Cara Rogers (collectively, "plaintiffs"). Defendants oppose the motion. Doc. 23.

### I.
#### BACKGROUND

This action arises from a two-car motor vehicle accident that occurred on the afternoon of March 6, 2016, in Calcasieu Parish, Louisiana. *See* doc. 1, att. 1, pp. 3–7 (state court complaint). On that date, Ray Schwegler, a professional truck driver who is the owner of Big Rig Trucking, Inc., was traveling southbound on WPA Road while hauling dirt to a work site in an eighteen-wheeler. *Id.* at 3–4; doc. 20, att. 4, pp. 8, 18, 32–34 (Schwegler deposition). At the same time, Jamie Rogers was traveling west on Highway 90. Doc. 20, att. 3, p. 12 (Rogers deposition).

Schwegler testified that he approached a stop sign at the intersection of WPA Road and Highway 90, came to a stop, and looked both ways, intending to make a right turn in order to go west on Highway 90. Doc. 20, att. 4, p. 55. He stated that when he looked to his left, he saw

Rogers' vehicle approaching from an estimated distance of two to three telephone poles away, and with Rogers flashing his lights. *Id.* at 55–59. Schwegler then began to make the turn, after which he made impact with Rogers' vehicle, striking immediately behind Rogers' passenger cab and causing the latter vehicle to spin out into the road. *Id.*; *see* doc. 20, att. 3, pp. 60–66 (accident report). In his deposition Rogers denied ever seeing Schwegler's vehicle "until he was right there on top of me," and admitted he did not see whether Schwegler had stopped at the stop sign. Doc. 20, att. 3, pp. 11, 16. He also stated that he did not brake before impact was made. *Id.* at 16. Finally, he recalled that traffic was light at the time of the accident, and that the only vehicle he noticed traveling west in front of him was "probably a couple of miles ahead." *Id.* at 12. As a result of the accident, Schwegler received a citation for failure to yield. *See id.* at 61–62.

Rogers alleges that he suffered numerous and extensive injuries from the accident. Doc. 1, att. 1, p. 5. His wife, Cara, alleges that she has suffered a loss of consortium. *Id.* at 6. They maintain that the accident was a result, in relevant part, of Schwegler's negligence.[1] *Id.* at 5. Accordingly, they filed suit against Schwegler, Big Rig Trucking, Inc., and insurers Progressive Direct Insurance Company and United Financial Casualty Company on October 14, 2016, in the Fourteenth Judicial District, Calcasieu Parish, Louisiana. *Id.* at 3–7. Schwegler removed the matter to this court on November 21, 2016, on the basis of federal diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1.

Plaintiffs have now filed the instant Motion for Partial Summary Judgment [doc. 20], alleging that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law on the issue of Schwegler's liability. Defendants oppose the motion. Doc. 23.

---

[1] In the complaint, the plaintiffs also allege that fault lies with an entity called Martin Transport, which has not been named as a defendant in this matter. *See* doc. 1, att. 1, pp. 3, 5. However, these allegations are not raised in the instant motion.

# II.
## LEGAL STANDARDS

### A. *Summary Judgment*

A court should grant a motion for summary judgment when it is shown "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2553 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id*.

Once the movant makes this showing, the burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986). The burden requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 106 S.Ct. at 2511.

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to draw all inferences based on underlying facts in the light most favorable to the non-moving party. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-

moving party, no reasonable trier of fact could find for the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

### B. *Negligence Under Louisiana Law*

Because our jurisdiction is grounded in diversity under 28 U.S.C. § 1332, Louisiana law applies to the substantive aspects of this case. *Erie R.R. Co. v. Tompkins*, 58 S.Ct. 817, 822 (1938). In order to prove liability in a negligence case, a plaintiff must satisfy every element of the duty-risk analysis used by Louisiana courts. *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So.2d 627, 632–33 (La. 2006). Under this analysis, the plaintiff must show:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Id.* (citing *Fowler v. Roberts*, 556 So.2d 1, 4 (La. 1989)).

Louisiana has adopted a comparative fault scheme, under which the degree of fault for all persons causing or contributing to the injury or loss must be determined. LA. CIV. CODE art. 2323(A). Accordingly, "a determination of tort liability for purposes of granting a partial judgment includes the requirement of a determination of comparative fault, i.e., on any particular claim the question of liability must be completely resolved between the parties for and against whom the partial summary judgment is rendered." *Mendoza v. Hicks*, 2016 WL 943598, *2 (E.D. La. Mar. 9, 2016) (quoting *Williams v. City of New Orleans*, 637 So.2d 1130, 1132 (La. Ct. App. 4th Cir. 1994)) (alteration omitted from *Mendoza*). In other words, summary judgment is inappropriate as to one party's liability when their comparative fault remain unresolved. *See, e.g.*, *Berthiaume v. Gros*, 165 So.3d 1275, 1279 (La. Ct. App. 3d Cir. 2015); *Saba v. Hosp. Housekeeping Systems,*

*Ltd.*, 2007 WL 4480677 (La. Ct. App. 1st Cir. Dec. 21, 2007). Where reasonable minds could differ about the degree of the other driver's responsibility, summary judgment cannot be granted on the issue of comparative fault. *Berthiaume*, 165 So.3d at 1279.

## III.
### APPLICATION

Plaintiffs maintain that Schwegler's liability is established through his failure to yield to oncoming traffic, in violation of Louisiana law. The doctrine of negligence per se has been rejected in Louisiana, statutory violations still provide guidelines for civil liability. *E.g.*, *Galloway v. State ex rel. Dep't of Transp. and Dev.*, 654 So.2d 1345, 1347 (La. 1997). Thus, such violations are relevant to determining duty and breach thereof in a given case. However, civil liability is only imposed if the statutory violation is determined to be a legal cause of the plaintiff's damages. *Faucheaux*, 615 So.2d 289, 292–93 (La. 1993

In this matter, the statute most clearly implicated is the traffic regulation concerning stop signs and yield signs (under which Schwegler was cited, supra). This regulation provides in relevant part:

> A. Preferential right of way at an intersection may be indicated by stop signs or yield signs.
>
> B. Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop . . . before entering the intersection. **After having stopped, the driver shall yield the right-of-way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.**

LA. REV. STAT. § 32:123 (emphasis added). "The jurisprudence is clear that stopping is only half of the motorist's duty [and that] [t]he other half is for him to assess traffic and make certain the way is clear before proceeding." *Ritchey v. State Farm Mut. Auto. Ins. Co.*, __ So.3d ___, 2017

WL 4337307, *3 (La. Ct. App. 1st Cir. Sep. 15, 2017). Conversely, the duty of the motorist approaching on the "favored" street is minimal. *Id.* As the Louisiana Supreme Court explained:

> A motorist on a right of way street is entitled to assume that motorists on the unfavored street approaching a stop sign will obey the traffic signal and will stop, look, and yield the right of way to traffic proceeding on the favored street. Of course, once a right of way motorist in the exercise of ordinary vigilance sees that another motorist has failed to yield the right of away, a new duty thereafter devolves on the right of way motorist to take reasonable steps to avoid an accident if there is enough time to afford him a reasonable opportunity to do so.

*Id.* (citing *Sanchez Fernandez v. Gen. Motors Corp.*, 491 So.2d 633, 636 (La. 1986)) (alteration omitted). Accordingly, "[t]he motorist on the favored roadway will be considered negligent only in exceptional cases where he could have avoided the accident by the exercise of the slightest degree of care." *Id.*

Schwegler asserts that genuine issues of material fact exist based on his testimony that he stopped and looked both ways at the stop sign, and that Rogers saw Schwegler and flashed his lights prior to Schwegler beginning to execute the turn. The plaintiffs maintain that summary judgment can still be entered based on the uncontested facts in this matter, as it is uncontroverted that Schwegler was not directed to proceed by a police officer or traffic control signal and that Rogers therefore had the right of way.

As Schwegler points out, however, "Individual drivers have a duty to operate, control, and use their automobiles reasonably, and to maintain a proper lookout for hazards which might pose an unreasonable risk of harm." *Caskey v. Merrick Constr. Co.*, 86 So.3d 186, 196 (La. Ct. App. 2d Cir. 2012). The Louisiana Supreme Court has directly addressed the duty with regard to signaling another driver as follows:

> **Any person who waves or signals to indicate the way is clear for a motorist to turn has a duty to exercise reasonable care in doing so.** However, before any person can be assessed with fault for failing to exercise

> reasonable care in waving or signaling, the party alleging the waver's negligence must prove the following: (1) the "waver" did indeed make a signal for the motorist to cross, (2) the "waver" intended to convey that he had checked for traffic, (3) the "waver" intended to indicate that it was entirely safe to cross the street, (4) the motorist reasonably relied on the signal in deciding to cross, and (5) these circumstances, taken as a whole, caused the accident.

*Roland Bros. v. Direct Gen. Ins. Co. of Louisiana*, 11 So.3d 1154, 1157 (La. Ct. App. 3d Cir. 2009) (quoting *Lennard v. State Farm Mut. Auto. Ins. Co.*, 649 So.2d 1114, 1118 (La. 1995)) (citation and alteration omitted) (emphasis added).

Plaintiffs attempt to disprove Schwegler's account by disputing that flashing headlights are commonly understood as a signal to proceed, and arguing that in any case this signal could not "abrogate legislation" by overcoming the requirement that Schwegler come to a complete stop at the stop sign and yield to oncoming traffic. Doc. 24, pp. 5–6. On this motion, we give no weight to plaintiffs' efforts to dispute how Schwegler understood a signal that they deny was ever made. As for plaintiffs' abrogation argument, this is also without merit as Schwegler clearly stated that he came to a complete stop and looked both ways before seeing Rogers signaling for him to proceed.

Additionally, plaintiffs argue that the manner in which the accident occurred contradicts Schwegler's version of events. They point to Schwegler's testimony that he only ever saw Rogers from his left side when Rogers allegedly signaled, and that Rogers then approached into Schwegler's blind spot as he (Schwegler) began the process of turning his truck to the right. *See* doc. 20, att. 4, pp. 55–59. They also emphasize that impact occurred at the right rear side of Rogers' vehicle, and assert that Rogers therefore could not have been in Schwegler's left blind spot as Schwegler suggests. Plaintiffs argue that the impact instead suggests a t-bone collision wherein Rogers was not to Schwegler's left, but instead directly in front of him at the time of impact, having

approached at such a rate that Schwegler could not have believed it safe to turn even if Rogers had signaled. Doc. 24, pp. 6–10. However, plaintiffs provide no expert report for their conclusions and we decline to draw such inferences in the absence of more data and without expertise to interpret that data.[2]

For the purposes of this motion, Rogers fails to disprove Schwegler's version events and Schwegler has shown that under his version of events Rogers may share some of the fault for the accident. Their disagreement on issues such as whether Rogers observed Schwegler's vehicle, whether he signaled, and whether Schwegler came to a complete stop prevents the court from apportioning liability. Accordingly, there is a genuine issue of material fact as to the comparative fault in this matter and the Motion for Partial Summary Judgment must denied.

## IV.
### CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [doc. 20] is **DENIED**.

THUS DONE this 25th day of October, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE

---

[2] Plaintiffs analogize the facts set forth above, and the inferences they would have us draw, to this court's opinion in *Reed v. Tokio Marine & Nichido Fire Ins. Co., Ltd.*, 2010 WL 1853566 (W.D. La. May 6, 2010). There Magistrate Judge Hayes determined that the circumstances of the accident indicated that the defendant failed to yield to oncoming traffic and was therefore 100% at fault for the resulting collision. *Id.* In that matter, however, there was no allegation that the plaintiff had signaled to the defendant that it was safe to proceed – only conclusory allegations of excessive speed, failure to employ avoidance maneuvers, and failure to keep a lookout; circumstances requiring more sensitive, and therefore dubious, perception than the assertion here that Rogers flashed his headlights as his car approached the intersection.

  Accepting Schwegler's allegations as true for the purposes of this motion – as, indeed, we must do since they are based on competent evidence and have not been disproven despite plaintiffs' efforts – we find that they create considerable issues as to whether Schwegler was obligated to continue looking left after believing he had been signaled to proceed.